Here's the first case, Canciper. Good morning, your honors. My name is Stephen Hyman on behalf of the plaintiff, Mona Canciper. This, we're appealing from the grant of summary judgment against us in a 1983 case. The, this is, we believe, a rather unique case in which the district attorney who handled the case hijacked the system for his own personal either vendetta or intention to prosecute Mona Canciper. He went and used the criminal justice system behind the back of Tom Spoda, behind the back of the rest of the district attorneys and in violation of his own, of the policy and custom of the office. In the . . . Why does that matter, all of that? Why does that matter in this case in terms of the, you know, just the legal analysis? It, and it's a fair question, your honor, and one that we, we have looked at. This case, when you put it all together, you start with the taking by LATO of the system, taking it completely away from those who, two other offices . . . You can violate state law and certainly you can violate state regulations and that doesn't make it something that you don't have qualified immunity in at the federal level. So how does, how does this differ from that, at that level? I mean, you may have a state claim, I know you've sued the SPCA in the state, but how does that make this a state, a federal claim? Because in the end, it starts with, which goes to Judge Walker's thing, that it goes to a defective warrant using, again, going around the system and having . . . The warrant is measured by the affidavits that are filed in support of it. But the affidavits, all three district attorneys, the two in CAB and LATO, all agree that everything was stale except for the last affidavit. LATO, in his testimony, says, I didn't have enough. The magistrate issued a warrant. But did not have all the facts before it. Didn't have all the facts about office policies and the fact that there had been a deviation from the office policies and the fact that the DA had earlier had turned it down, but had the facts of the case before it. I mean, you're not challenging the, as I understand it, you're not challenging the content of the affidavits. Well, we do challenge the content. We're not saying that LATO committed perjury. Right. Right? No. No. If you look at the five, you point to five considerations that you think of as omissions, right? Right. That CAB had been reluctant to seek a warrant. That LATO took the case without CAB's knowledge. That LATO instructed the SPCA regarding the collection of witness statements. That the SPCA would be investigating non-animal abuse crimes and the two witnesses had been discredited. Now, aren't the first three irrelevant to the magistrate's determination of probable cause? That CAB had been reluctant to seek a warrant. That LATO took the case without the CAB's knowledge. That LATO instructed the SPCA regarding the collection of witness statements. No, because the witness statement, one of them, was, of course, the child endangerment. The only statement that was valid, according to all the district attorneys, was the nine-year-old statement which led to the child endangerment, which both Spoda and LATO admit were not within the jurisdiction of the very organization, the SPCA, that LATO directed. No, but once again, even if it wasn't within their jurisdiction, that is not a matter that makes something not subject to qualified immunity federally. Even if this was a violation of state law for him to do that, if that was not absurd in itself, it doesn't give rise to something that violates qualified immunity. But isn't there a point where there is the omission and where there is a, we claim a defective search as well. Isn't there a point where 1983 comes into play where they have definitely violated state law resulting in the misprosecution and search of Cancer Pris property and her body? What state law did they violate? I understand state policy. I understand state internal regulations about how business is supposed to be done. But what state law did they violate? CPO 690. Which is what? The search warrant. Oh. Says the police officer directed to a police officer. No police officer did that search. Oh, I see. Oh, that's a different matter. Okay. I thought you were talking about the internal policy. The internal policy is not itself a violation. It's what he did and how he took the system and used it. I mean, even Spoda admits that it was outside his jurisdiction. It's an unusual case in that you have a district attorney who's sort of using his own personal email, took a case, used the trappings of the system, got a warrant, and then got an indictment. That is what is the basis if there is one in state law of malicious prosecution, of abusive process, all sorts of things which may or may not be there under what New York law does. But why does any of that make the search warrant, which is what your basis is, invalid? Take everything out but the statement of the last witness, which was not stale, and couldn't a court, wouldn't a warrant on that basis give rise to a search? Not if it was obtained in violation of state law and thus making the warrant invalid. I mean, ultimately it comes down to the fact that 1983 says if there's an invalid warrant, you have a 1983 violation. It's an invalid warrant, but you're making the leap that what happened earlier caused the warrant to be invalid. Yes. And that's where I'm having difficulty, seeing how the warrant was invalid. Can I follow up on that, too? You say, I went through three of the five considerations that you point to, and I was having trouble seeing their relevance to the magistrate's determination of probable cause. The fourth was that the SPCA would be investigating non-animal abuse crimes. But when you look at A274, this is in the appendix, right? And this goes to your view, as I understand it, that somehow it was being concealed, the investigation of non-animal abuse crimes. And what it says in A274 very clearly, I further, it says in the bottom- I see. On A273, it makes reference to evidence of endangering the welfare of a child. So it wasn't concealed. No, but the fact that they were not authorized or empowered and that he later brought them in to do that. I mean, the statute is clear. Are you saying that they should have, before the magistrate, said, oh, and by the way, we're not empowered to do this? Well, that's- We are asking about this, and here is the evidence of that, but the SPCA is not empowered to do this. That is one aspect of our argument, yes, Your Honor. Okay. And we also would- Is there any evidence at all that there was any awareness of the discredited, the two discredited witnesses? Of any what, Your Honor? Discredited witnesses. No, not directly to the magistrate, no. Well, is there any indication that Lato himself had been told by the SPCA that these witnesses were discredited? Yes. The record, I think, is clear. He knew what he was getting into and admitted that the warrants were insufficient to prosecute. Not the warrants, the affidavits. Are you saying that- I thought it was a question of staleness, but are you saying these witnesses were discredited at the time that the magistrate issued the warrant? Well, they knew that the Norklin had already said that there was insufficient evidence for a crime. That's different. The question of staleness is there, but in some places in the briefs you suggest that the SPCA knew that one of these witnesses was discredited. And I don't know what the evidence of that is, but what I'm wondering is whether there is anything in the record that says that Lato knew of whatever discreditation other than staleness was there. I believe if you look at 644, my partner, Mr. Sash, has pointed out that there is... One of them was known to have been filing false complaints. Known to whom? Norklin. Known to the SPCA? That's correct. My question remains, was that fact? Is there anything in the record that shows that that fact was given to Lato? Well, he had... I can't speak directly that that specific fact was told to him. But that is the only fact other than staleness, and staleness is one kind of thing, and falseness is a different one. Well, the major thing, I mean, he does admit to stale, not ripe enough or recent enough for me. No, no, I understand that. Then I can't answer that as I stand here directly, Your Honor. You'll have some time, and you have no rebuttal, so, OK, you're two minutes over your time. I am. So if I may have a rebuttal, if I find that, may I bring it to your notice? No, no, no, no. I will honor your request for no rebuttal. Thank you. Thank you, Your Honor. Good morning, Your Honors. Evan Goldberg for the appellee, Leonard Lato. At the risk of going over some of the grounds you've just covered, summary judgment was entirely appropriate on all three causes of action. Can you help me understand, when the SPCA first approached Mr. Lato seeking a warrant, he said that the information in the statements were too stale, right? That's what the record shows. So what was the new information that allowed him to go forward? He requested of the SPCA to obtain an additional statement from the 10-year-old girl, 9-year-old girl, which occurred, a statement was taken from her that she had witnessed an injection of a dog on the property. And was that the only new information? Yes. Yes. Did the magistrate . . . So the magistrate had before him . . . Who was the magistrate? Do you know who the magistrate was? I'm sorry, Your Honor, I don't. Okay. The magistrate had before him or her that it had the prior affidavits and this new affidavit. Is that right? That's right. So the idea was that this was not stale anymore because of what? I mean, was the information going way back? Particularly, Your Honor, sorry to interrupt you. The witness statements were from the preceding . . . I see. And they referenced events that had happened over the previous 15 months, and some of which, though, was the abuse of animals and the burying of animals on the farm, so it's logical that the remains of the animals would still be on the farm. Right. And there was a continuing course of conduct as well. I believe of the five initial witness statements, the most recent events that were referenced in there were the end of 2009, so we're talking three months or so? Uh-huh. I don't necessarily . . . Yes, in the record, there's this discussion of staleness, but I don't think we're talking about particularly stale, given the context. And then when it came to the prosecution of the case, Lado prosecuted the case, I guess. Is that right? He left the DA's office. Oh, he did? Yeah. So he turned it over to somebody else who made an independent decision to prosecute? Yes, I believe so. Based upon, first, the affidavits, but then also interviewing the witnesses? Presumably, yes. The . . . Right, a presumption of probable cause under those circumstances. Certainly. And certainly under the Melissa's prosecution clause of action, there's a presumption of probable cause from the grand jury indictment. And it's only . . . Now, what about the execution of the search warrant? I mean, they're taking the position that the prosecutor really executed the search warrant, Lado. Yes. And if that's the case, he wasn't acting in his prosecutorial capacity. He was acting as an investigator, correct? That's true. I mean, he would be qualified immunity. So he wouldn't get full immunity, prosecutorial immunity, under Imler? That's right. But you're arguing that he gets qualified immunity, as would any agent? Certainly. And I would also argue that even putting immunity principles aside for a second, I don't think a reasonable juror could credit the appellant's account of Mr. Lado's conduct at the farm that day. There's documentary evidence at A258, the log-in sheet of the crime scene, that shows that Mr. Lado was at the farm for approximately 20 minutes. He was there at 1. He left at 1.20. There's been no allegation that there's . . . Then he went out to get a renewal, right, to get the warrant extended to cover the house? He did not go. Somebody . . . Yeah, I believe Officer Norkelin went. Mr. Lado's presence on the farm was to, I believe, hand over the materials for them to get the piggyback warrant. But that might be the question of whether that's a material issue of fact. I mean, it is disputed. You say no reasonable juror could find. I have a different question. Did the district court dismiss the state claims with prejudice? That is, the malicious prosecution and the abuse of process claims with prejudice? I honestly don't know, Your Honor. I apologize. I believe they did. I think they did. I think they did. And my question is, why should we affirm that? Now, the malicious prosecution with a grand jury finding is very hard to make out any state case. But abuse of process, which probably should be the same as malicious prosecution in New York, isn't 100% sure. It's a different thing. Why shouldn't we, on that, dismiss without prejudice to filing in state court on the state claims? Your Honor, I would say because under abuse of process, there has been no showing in the record that there was a collateral objective. There's a speculation. All that is a matter of state law. And what is state law of abuse of process? There's really very little. There's a lot of malicious prosecution. There isn't that much in New York on what abuse of process is. And why isn't that something that we ought to leave to the New York courts and just deal with the question of whether the getting of a warrant was a violation of 1983, et cetera? Your Honor, I could do that. I could take that action. Again, I don't believe there is anything other than just speculation and conjecture in the record. Well, if that is so, the New York court will deal with it. Precisely. It's just a general matter. The district courts, I think, tend, when they decide there is no federal case, very often say, therefore, there is no state case. And that's not always the same. I understand, Your Honor. Isn't it odd that somebody in the Insurance Crimes Bureau would get involved in an animal cruelty case? Perhaps, Your Honor. But that's not dispositive of a 1983 claim. And the Insurance Crimes Bureau handles search warrants. That's in the record. Your adversary says that Lado pursued this case because of his friendships with various SPCA. Yes, Your Honor. Again, I think that's just an allegation that's unsupported by the record. Yes, he had a friendship with one of the SPCA board members. But in the record, it's very clear. That may make it smell. And there's a lot about this case that smells, I must say. But does that make it a violation? No. If he did this because, not out of malice, that may be a different thing. But if he did this because he had friends in the SPCA and they said, we can't get one DA to do it, will you do it, is that a violation of federal law? No. Of qualified immunity? No, I don't believe it is because I don't think she has a clearly established constitutional or federal statutory right to have a particular bureau in the DA's office handle a particular type of case. There's no clearly established right that she has. She doesn't have a clearly established right under the Fourth Amendment that only the SPCA can investigate animal cruelty. She doesn't have a clearly established right under the Fourth Amendment that only the police can execute a search warrant. These are all reasons that militate in favor of qualified immunity. But they're all things which may allow a suit under the state, depending how the state looks at abuse of process. Yes, Your Honor. If you don't have any other questions, Your Honor, I don't believe I have anything else. Thank you. Thank you, sir. May it please the Court. Regarding Defendant Spoda, the first word that comes to mind is knowledge. Essentially, the plaintiff's claims against Defendant Spoda, Apelli Spoda, are all based on what Tom Spoda knew and when he knew it. And certainly, there's no evidence in the record at all that could support a finding that Tom Spoda was aware of any misconduct by Apelli Leto. Of course, it's our position that Apelli Leto's conduct was perfectly reasonable and that there was no underlying constitutional violation in the first place. In terms of being aware of the search itself, the press secretary, I believe, received notice, right, of this warrant two days before the search, right? Through an email is an argument that he received notice of the warrant, Your Honor. That's correct. There is no evidence that Tom Spoda was aware that the press secretary received notice of that. Even if we were to make an inference, which I don't believe is a reasonable inference, but even if we were to say that a jury could find a reasonable inference that because his press secretary knew a warrant was being executed, that Mr. Spoda had that knowledge, there's no evidence that he had any knowledge that there was going to be any misconduct. It's perfectly reasonable for a DA to make the presumption that a warrant that has been signed by a local magistrate is valid. And that when it gets executed, that it's going to be executed in a proper fashion. So there's no evidence that Tom Spoda knew of any misconduct. At best, that a warrant had been signed. Nothing beyond that. He has no personal involvement in the actual search of the property. He has no knowledge of how the search was conducted or the manner in which it was conducted. The plaintiff points to two, other than the press secretary concept, he points to a response in Pelli Leto's response to an interrogatory that asked when did the District Attorney Spoda become aware, quote unquote, of the warrants. And Spoda's response is the day of the warrant or the day after. The next question is what was the basis of that awareness? And Leto's response is I don't know. So just from the concept of whether evidence would be admissible before it can be considered for summary judgment, Leto saying I don't know what the basis of his awareness is indicates that the initial question would be hearsay and wouldn't be admissible. There was an initial effort on the part of the SBCA to have the office pursue this case, which was rebuffed, correct? Yes. By initial assistant district attorneys reviewed and found the staleness issue. Right. And so was that known to Spoda? It was not. There's a and this is a if you follow a literally a bouncing ball. Spoda doesn't become aware of the execution of the warrant or the even the investigation of Ms. Cancifer until after the grand jury has returned an indictment. The evidence that shows that is Spoda is told what of the indictment in the investigation by an assistant D.A. named Ed Jablonski. Jablonski doesn't know and doesn't become aware and doesn't become angry at Leto until the grand jury vote comes down because it happens where Jablonski's office is. That day, he basically looks and says to Leto, what are you doing? And Leto says, I'm doing this Cancifer case. It's in the wake of that that Jablonski contacts Spoda and is angry at what Leto is doing. So by the when you connect the dots, Spoda doesn't know about this until after the grand jury presentation. The only thing I and I wanted to mention one thing regarding the concept of the validity of these warrants. Plaintiff has never argued in my as far as I can tell anything other than the validity of the warrant coming from the concept that the S.P.C.A. was executing it, not the police. We're now hearing about attacking the validity of warrant through the content of the warrant that was presented to the magistrate. We've never heard that argument before. I don't think that's an argument they can raise now because it's never been raised. I don't think it's even in the complaint. And so I would argue they waive that. Lastly, even if we were to look and presume that Spoda had knowledge of a warrant, there's no knowledge of misconduct. And he also is entitled to immunity for anything that's post arraignment, a post grand jury. He gets absolute prosecutorial immunity. He would get qualified immunity for the concept of post grand jury. Does he if he has anything to do with the continuing the prosecution because it's reasonable to expect that a grand jury is returning indictment. There's a presumption of probable cause. That presumption continues on because she was convicted. Although the conviction was overturned, the presumption still applies. And then lastly, I just wanted to mention, plaintiff talks about the concept of administrative conduct on the part of the DA and whether that would affect immunity. That is an argument that does not have a relation or merit to this case. Administrative conduct on the part of the district attorney refers to his role, whether he's a state actor or a county actor when examining essentially a Monel claim. Essentially whether a county can be liable for the conduct of the district attorney. Courts have looked at that and looked at is he acting administratively or prosecutorially. As opposed to prosecutorial immunity, which is prosecutorial versus investigative. In this instance, that administrative slash prosecutorial analysis just has no basis. It doesn't apply in this case. There's no official capacity claim and there's no Monel claim. Thank you. Thank you. Thank you all for your arguments. The court will reserve decision.